[No. B040912. Second Dist., Div. Two. Feb. 28, 1990.]

MARIA SIMMS, Plaintiff and Respondent, v.
ALEXANDER POPE, as County Assessor, etc., et al., Defendants
and Appellants.

474

COUNSEL

De Witt W. Clinton, County Counsel and Albert Ramseyer for Defendants and Appellants.

Lawrence E. Weitzman for Plaintiff and Respondent.

OPINION

**FUKUTO, J.**—Alexander Pope, as county assessor (Assessor), and the Assessment Appeals Board, County of Los Angeles (Board), appeal a judgment in favor of plaintiff, Maria Simms, granting her a property tax refund.

Simms received a permit to build an addition onto an existing single family dwelling. Tax assessment personnel measured and diagrammed the addition during the framing stage. Subsequent to the completion of the improvement, an attempt was made to verify these measurements in order to establish the value of the addition for tax purposes. Simms's husband ordered the appraisers off the property.

The Assessor calculated the size of the addition to be 2,010 square feet. Based on this figure, the addition was valued at $105,500.[1]

Simms challenged the property tax assessment of her residence by filing an application for change in property tax assessment with the Board claiming a refund. Simms contended that the completed addition measured 1,512 square feet and was valued at approximately $73,000. Her square footage figure was based on measurements her husband and her attorney had taken of the interior of the addition.

Maintaining that the best way to calculate the area of the subject property was to measure it on site, the Assessor requested that the Board issue an order directing Simms to allow an appraiser to enter onto the property for the purpose of measuring the addition. Simms took the position that the Board did not have the "equitable power" to make such an order, and contended that the Board was obligated to "rule on the evidence at this time." The Assessor summed up its position as follows: "We have submitted the best data that we have available based on our initial view of the property when it was under construction based on our estimate of the

---

[1] Only the improvement value of the new addition is at issue. The value of the land and previously constructed residence were not contested.

quality of construction, all the evidence that was available to us during our visits to the property. Based on that we stand on our value [$105,500] as presented." The Board upheld the assessment as established by the Assessor. Simms paid the disputed tax and then filed an action for refund.

The trial court reversed the decision of the board, based upon the following analysis. "[Simms] made an addition to her residence by contracting with a licensed contractor to add two bedrooms, a den, and one and one-half bathrooms. [Simms] paid [$73,000] for the addition. [Simms] did not accept the low bid, but took the second highest bid. [Simms] took out a city building permit, and the city indicated that the addition was 1,250 square feet. [Simms] measured the addition herself at [1,512] square feet. The Assessor was denied access to the property, and estimated the size of the addition by viewing the outside of the residence. The Assessor's estimate was 2,010 square feet. The Assessor did not review the building permits. The Assessor valued the addition at [$105,500]. [¶] The Court finds that there was no substantial evidence presented to the Board to establish the value of [$105,500]. The only evidence of cost was the price paid by [Simms] and the permit issued by the city. [Simms's] claim for $1,317.84 refund of overassessment is granted."

█ On appeal the Assessor contends that the trial court properly applied the "substantial evidence" standard of review, but erred in finding that there was no substantial evidence to support the Board's finding that the value of the addition was $105,500. █ Simms, on the other hand, contends that "[t]he enactment of section 5170 of the Revenue [and] Taxation Code retroactively establishes that the trial court is to use the independent judgment test rather than the substantial evidence test." █ Simms also contends that notwithstanding the retroactivity of section 5170, there was no substantial evidence supporting the Board's findings and the trial court appropriately overruled the Board.

█ Revenue and Taxation Code section 5170 provides: "In suits for the refund of state-assessed property taxes, the trial court shall not be restricted to the administrative record, but shall consider all evidence relating to the valuation of the property admissible under the rules of evidence." The court, in reviewing such actions, is required to base its decision on the "preponderance of the evidence" before it. (Rev. & Tax. Code, § 5170.) The express language of the statute restricts its application to "state-assessed property taxes." "State-assessed property taxes" refers to property assessed by the State Board of Equalization pursuant to the California Constitution, article XIII, section 19. (See Rev. & Tax. Code, § 721 et seq.) Such property is not involved in this case. We conclude, therefore, that section 5170 is inapplicable.

■ The scope of review for a trial court in reviewing the administrative record of a local board of assessment appeals is set forth in *Norby Lumber Co.* v. *County of Madera* (1988) 202 Cal.App.3d 1352, 1362 [249 Cal.Rptr. 646]. If a taxpayer claims that the assessor and the board "erroneously applied a valid method of determining full cash value, the decision of the board is equivalent to the determination of a trial court and the trial court in turn may review only the record presented to the board. The trial court may overturn the board's decision only when no substantial evidence supports it, in which case the actions of the board are deemed so arbitrary as to constitute a deprivation of property without due process. [Citation.] In those cases where the substantial evidence test is to be applied, the trial court does not weigh the evidence in the administrative record nor does it exercise its independent judgment. Rather, it reviews the entire record to determine if there is substantial evidence to support the findings of the administrative agency. [Citation.]" (*Ibid.*)

■ "Every assessor shall assess all property subject to general property taxation at its full value." (Rev. & Tax. Code, § 401.) This statutory duty is mandatory. (*Domenghini* v. *County of San Luis Obispo* (1974) 40 Cal.App.3d 689, 694-695 [115 Cal.Rptr. 608].) In order to perform this duty an assessor may request information and records regarding the property. (Rev. & Tax. Code, §§ 441, subd. (d), 442, 470.) Where the taxpayer has been accorded the first opportunity to produce the required data, and refuses to do so, "the assessor is not thereby relieved of this obligation to act. He is still required by law to assess the value of all taxable property, but he is then authorized to utilize whatever evidence is available to him." (*Domenghini* v. *County of San Luis Obispo, supra,* 40 Cal.App.3d at p. 695.)
■ Where, as here, the taxpayer fails to furnish an assessor with an opportunity to gather information necessary to allow the assessor to perform his statutory duty, the assessor is required to "estimate the value of the property and, based upon this estimate, promptly assess the property." (Rev. & Tax. Code, § 501.)[2] "If that evidence is less than the best, the [t]axpayer has no one to blame but himself. At that point, the law wisely refrains from attempting to prescribe technical or meticulous rules of evidence since the greater good requires that no property shall escape its just burden of taxation. The law then requires only that the assessor act 'based upon information in his possession.' " (*Domenghini* v. *County of San Luis Obispo, supra,* 40 Cal.App.3d at p. 695.)

---

[2] Revenue and Taxation Code section 501 provides, "If after written request by the assessor, any person fails to comply with any provision of law for furnishing information required by Sections 441 and 470, the assessor, based upon information in his possession, shall estimate the value of the property, and based upon this estimate, promptly assess the property." There is no dispute in this case concerning the assessor's request, or the taxpayer's refusal to allow the assessor access to the property for the purpose of measuring the addition.

■ " 'It is a rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them, and, consequently, that their assessments are both regularly and correctly made.' " (*Glidden Company* v. *County of Alameda* (1970) 5 Cal.App.3d 371, 383 [85 Cal.Rptr. 88].) This presumption exists in cases such as the instant one where an assessor bases an assessment upon an estimate made pursuant to section 501 of the Revenue and Taxation Code. The assessor has only to show that, "based on information in his possession" he estimated the value of the property, and based on this estimate arrived at an assessment. The burden then shifts to the taxpayer to show that the assessor's estimate of value is incorrect, and that as a result the taxpayer paid more taxes than he should have. (See *Domenghini* v. *County of San Luis Obispo, supra,* 40 Cal.App.3d at p. 700; *Griffith* v. *County of Los Angeles* (1968) 267 Cal.App.2d 837, 842 [73 Cal.Rptr. 773].)

■ In this case, the Assessor admitted that the square footage figure upon which the value of the addition was established might be incorrect. However, the appraiser testified that he measured and diagrammed the addition during the framing stage before being ordered off the property, and that he had been unable to convince Simms to allow him onto the property in order to verify these measurements following completion of construction. In other words, the Assessor was able to show that "based on information in his possession" he estimated the value of the property, and based on this estimate, arrived at an assessment, thus giving rise to the presumption that the assessment was both regularly and correctly made. A review of the record reveals that Simms failed to produce evidence to rebut the presumption. Simms, without introducing any substantiating evidence, simply contended that the addition measured 1,512 square feet. Although she asserts that the Board should have given more weight to her husband's testimony concerning the size of the addition, it is hardly surprising that the Board refused to accept such testimony as credible. The self-serving declarations of an individual who has repeatedly frustrated an assessor's attempt to obtain measurements necessary for a fair and impartial appraisal of his property is entitled to little weight. In addition, Simms conceded that the certificate of occupancy issued by the city did not accurately reflect the actual size of the addition. Although testimony was received that Simms did not accept the highest bid for the construction of the addition, Simms presented no supporting information concerning the bid that was finally accepted. Further, given the complexity of the appraisal process, it is doubtful that disclosure of the details of the bids alone would have supported a finding in favor of Simms.

The trial court erred in finding that there was "no substantial evidence presented to the Board to establish the value of [$105,500]." If the evidence

of value produced by the Assessor was "less than the best," Simms "has no one to blame" but herself. She denied the Assessor the ability to employ the usual appraisal methods, and as a result was required to assume the burden of showing that the assessment was incorrect. This she failed to do. We conclude that the trial court erred in declaring that Simms's value testimony applied, and then directing the Board to enter the lower assessment value proposed by Simms.

Judgment is reversed. Appellants to recover costs on appeal.

Compton, Acting P. J., and Gates, J., concurred.