[No. B061915. Second Dist., Div. Five. Mar. 11, 1993.]

SOUTHERN PACIFIC PIPE LINES, INC., Plaintiffs and Respondents, v. STATE BOARD OF EQUALIZATION et al., Defendants and Appellants.

44

## COUNSEL

Daniel E. Lungren, Attorney General, Timothy G. Laddish, Assistant Attorney General, Edmond B. Mamer and Philip C. Griffin, Deputy Attorneys General, De Witt W. Clinton, County Counsel, and Albert Ramseyer, Deputy County Counsel, for Defendants and Appellants.

O'Neill, Huxtable & Abelson, Mary L. O'Neill, Hanna & Morton, Edward S. Renwick and Stephen G. Mason for Plaintiffs and Respondents.

## OPINION

**GODOY PEREZ, J.**—This appeal raises the question, to what extent may private oil company pipelines which run through more than one county be centrally assessed by the State Board of Equalization. For the reasons stated below, we affirm the trial court's judgment, as modified, and hold that lands and rights-of-way through which such pipelines run must be locally assessed and taxed and that only the line itself and certain items necessary to its operation may be centrally assessed.

### FACTS AND PROCEDURAL HISTORY

This tax refund action arises out of 15 consolidated lawsuits by various oil and pipeline companies against the State Board of Equalization and 19 counties.[1] Four of those cases settled, leaving the following plaintiffs: Chevron, U.S.A., Inc.; Mobil Oil Corporation; Standard Gas Company; Standard Pipe Line Company; Shell Oil Company; Shell Western E&P, Inc.; Texaco Trading and Transportation, Inc.; Golden West Refining; and Union Oil Company of California (respondents).

In 1933, as part of the Riley-Stewart Tax Plan, the voters approved an amendment to California Constitution, article XIII, section 14, which provided for the central assessment and taxation by the SBE of certain enumerated properties. That amendment provided, in relevant part, for the central taxation of: "All pipe lines, flumes, canals, ditches and aqueducts not entirely within the limits of any one county, and all property, other than

[1]In addition to the State Board of Equalization (SBE), the following counties were named as defendants: Alameda, Contra Costa, Fresno, Kern, Kings, Los Angeles, Merced, Monterey, Orange, Sacramento, San Joaquin, San Luis Obispo, San Mateo, Santa Barbara, Santa Clara, Solano, Stanislaus, Ventura and Yolo. Of these, only Los Angeles County has appeared on its own behalf and will be referred to throughout as "the County". The County and the SBE will sometimes be referred to collectively as "appellants."

franchises, owned or used by" certain enumerated public utilities, including railroad companies and other common carriers, telegraph and telephone companies and companies engaged in the transportation or sale of gas or electricity.

In 1934, the SBE required the owners of private, intercounty oil pipelines, which were not public utilities, to list and report all their physical property, including lands and rights-of-way, so the SBE could assess and tax those properties pursuant to the amended version of California Constitution, article XIII, section 14 (section 14).[2] One such company, General Pipe Line, brought a declaratory relief action against the SBE to determine: 1) whether section 14 applied to private oil pipelines as well as public utilities; and 2) for a definition of what constituted a pipeline for assessment purposes under section 14.

The trial court entered judgment for General Pipe Line, ruling that section 14 only applied to public utilities. The trial court also defined the term "pipeline" for section 14 taxation purposes. The definition was limited to the line itself and various classes of tanks, fittings and mechanical devices which were "essential to the use and operation of the pipe line." That definition did not mention lands or rights-of-way.

On appeal, the Supreme Court reversed, holding that section 14 by its terms applied to private, intercounty pipelines as well as public utility pipelines. The court went on to rule that the question of what constituted a pipeline under section 14 was not properly before the trial court and reversed the entire judgment.

The pipeline company petitioned for rehearing, urging the court to eliminate the uncertainty caused by its decision and establish the definition of "pipeline" under section 14. The court granted the petition for rehearing and issued a new opinion. While still holding that section 14 applied to private pipelines, the Supreme Court affirmed the trial court's judgment and findings as to what constituted a pipeline and adopted the trial court's definition verbatim. (*Pipe Line Co.* v. *State Bd. of Equalization* (1936) 5 Cal.2d 253, 256-257 [54 P.2d 18].)

As a result, the SBE modified its instructions, did not treat private, intercounty pipelines as including land or rights-of-way and no longer

---

[2]This provision has been superseded by California Constitution, article XIII, section 19. The 1974 revision by which this was accomplished was not intended to create any substantive changes, and the original language of section 14 and the authorities construing it are relevant to interpret the present language of section 19. (*ITT World Communications, Inc.* v. *City and County of San Francisco* (1985) 37 Cal.3d 859, 870, fn. 6 [210 Cal.Rptr. 226, 693 P.2d 811].) Accordingly, we will refer to section 14 and section 19 interchangeably.

required owners of such pipelines to furnish information concerning lands and rights-of-way.

This administrative construction continued until on or about May 20, 1982, when the SBE took the position that it was constitutionally permitted to assess and tax the lands and rights-of-way owned by private, intercounty pipelines.

An oil industry association and seven oil companies operating intercounty pipelines were granted a writ of mandate and permanent injunction which ordered the SBE to stop collecting information about the lands and rights-of-way on the ground that the SBE had no jurisdiction to do so. The Court of Appeal affirmed that judgment, but the Supreme Court reversed in *Western Oil & Gas Assn.* v. *State Bd. of Equalization* (1987) 44 Cal.3d 208 [242 Cal.Rptr. 334, 745 P.2d 1360].

The court held that since its decision in *Pipe Line Co., supra,* 5 Cal.2d 253 did not expressly include or exclude lands and rights-of-way, the SBE's lack of jurisdiction was not so obvious as to warrant prepayment tax relief. (*Western Oil & Gas Assn.* v. *State Bd. of Equalization, supra,* 44 Cal.3d 208 at pp. 213-215.) Instead, the oil companies were obligated to first pay the taxes, then exhaust their administrative remedies by way of postpayment challenges. (*Id.* at pp. 212-213.)

Taxes were assessed by the SBE against various lands and rights-of-way held by respondents, along with certain facilities operated in conjunction with their private pipelines. The tax years at issue were: 1984-1985; 1985-1986; 1986-1987; and 1987-1988. Claims for refunds for each of those years were filed by respondents, pursuant to Revenue and Taxation Code section 5141, subdivision (b). Those claims were rejected by appellants. The consolidated lawsuits before us soon followed, pursuant to California Revenue and Taxation Code, section 5148.

A court trial was held on three days—September 26, 1990; November 2, 1990; and December 14, 1990—on stipulated facts, along with the declarations of various witnesses. Judicial notice was requested and taken of the entire judicial records in the *Pipe Line Co.* and *Western Oil & Gas Assn.* cases, along with the administrative records in respondents' petitions for reassessment.

The trial court ruled that the holding in *Pipe Line Co., supra,* 5 Cal.2d 253 forbade assessment of respondents' lands and rights-of-way by the SBE. The court ordered a refund of all taxes paid by respondents pursuant to the SBE's improper assessments.

The three facilities at issue are: 1) Shell Oil's Ventura Products Plant in Ventura County; 2) Union Oil's Avila Wharf in San Luis Obispo County; and 3) Chevron's Estero Bay Marine Terminal in San Luis Obispo County. The uses of these facilities were established by the parties' declarations.

The Avila Wharf has several uses: It receives refined petroleum products by ship, which are placed in nearby storage tanks before being loaded onto trucks for customer delivery; it is used to load semirefined products received from intracounty pipelines in nearby Santa Maria; it is used to offload feedstock from tankers for transportation along the same intracounty pipeline to the Santa Maria refinery; and crude oil from the Santa Maria, intracounty pipeline is loaded onto tanker ships at the wharf.

From January through October 1990, only 8 percent of the wharf's activity came from the use of intercounty pipelines. From 1985 through 1990, oil delivered by intercounty pipelines never accounted for more than 43 percent of the wharf's activity. When the wharf was destroyed by a March 1983 storm, Union's intercounty pipeline which ran to the wharf continued to operate for 21 months while the wharf was rebuilt.

Shell's Ventura Products Plant was constructed to receive refined oil products by both tank truck and intercounty pipeline. The plant is also designed to load gasoline into tank trucks for delivery to Shell customers. Various additives are blended with the gasoline before it is loaded onto delivery trucks.

During periods when the pipeline is shut down, the plant still operates and is served exclusively by tanker trucks. When the pipeline was damaged and shut down for five months in 1978, the plant continued to operate. The Ventura plant and the pipeline are operated by different Shell divisions.

Chevron's Estero Bay Marine Terminal was built to receive crude oil both by intercounty pipeline and by tank truck for loading onto tanker ships. The pipeline could continue to operate even if the oil were pumped directly aboard the ships or trucks. A portion of the equipment at the terminal is designed to remove and clean oily ballast water from tanker ships docking at the facility.

The trial court found that those facilities were not part of respondents' intercounty pipelines and were neither essential nor necessary to the operation of those pipelines. A refund of all taxes assessed on those facilities by the SBE was also ordered.

## APPLICABILITY OF ARTICLE XIII, SECTION 19

The first question we are called upon to answer is the interpretation of California Constitution, article XIII, section 19, in light of the rulings in *Pipe Line Co.* v. *State Bd. of Equalization, supra,* 5 Cal.2d 253 and *Western Oil & Gas Assn.* v. *State Bd. of Equalization, supra,* 44 Cal.3d 208. This is a purely legal question which we will resolve de novo. (*L.A. County Safety Police Assn.* v. *County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1384 [237 Cal.Rptr. 920].)

Our starting point is the trial court judgment in *Pipe Line Co., supra,* which was affirmed by the Supreme Court. ■ "The meaning and effect of a judgment is determined according to the rules governing the interpretation of writings generally. [Citations.]" (*People* v. *Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 76 [285 Cal.Rptr. 575].) If a judgment is ambiguous, we may examine the entire record to determine its scope and effect. (*Ibid.*) This includes the pleadings. (*Pomona etc. Co.* v. *San Antonio etc. Co.* (1908) 152 Cal. 618, 632 [93 P. 881].)

The complaint for declaratory relief in *Pipe Line Co.* alleged that the SBE had required the plaintiff to list and report for section 14 tax purposes all property of any kind owned by the company, including lands and rights-of-way. Plaintiff sought a declaration that the term "pipeline" meant only the line of pipe itself and certain enumerated fittings and not those items sought to be taxed by the SBE.

SBE's answer to the complaint alleged that the term "pipeline," as used in section 14, included lands, rights-of-way and all facilities "necessary or appurtenant to the operation of" the pipeline. The SBE asked the trial court to rule that it was therefore permitted to tax those items.

After stipulating that the parties wanted the court to determine the classes of property which could be assessed by the SBE under section 14, SBE set forth the classes of property which it contended constituted a pipeline. These included not only the line and its constituent mechanical parts and fittings, but buildings and structures such as pump houses, residences, bunkhouses, cook and tool houses, lands and rights-of-way.

The SBE later revised this list, deleting structures such as bunkhouses and residences, but including nearly all of the mechanical constituent parts of the line, along with certain tanks into which oil flowed. While the SBE still claimed a right to assess rights-of-way, it no longer specifically included "lands" within its definition of an intercounty pipeline.

The trial court's findings of fact and conclusions of law on this issue began with the following preamble: "The issue of what constitutes an intercounty pipeline within the meaning of said section was submitted on certain stipulated facts and upon evidence and the court, having duly considered the same, now finds the following as the facts:" The court went on to rule: "That a pipe line for the purpose of assessment under section 14 of article XIII of the Constitution of the State of California, as amended June 27, 1933, may be and is hereby defined as follows: 'The line of pipe, together with couplings, collars, valves and fittings, with protection covers; the structures supporting or encasing the pipe, above or below ground or under water; the pumps, boilers, engines, motors, manifolds, intakes, header station, control valves and auxiliary equipment attached to and connected therewith and necessary to the operation of the said major station units, receiving, shipping, flow, balance and surge tanks, together with the suction from leased storage tanks, to, by and through pumping stations, when such pumps, tanks and so forth are essential and part of and necessary to the use and operation of the pipe line.' "

Appellants wrongly contend that the ruling in *Western Oil & Gas Assn.* v. *State Bd. of Equalization, supra,* 44 Cal.3d 208, stands for the proposition that lands and rights-of-way are centrally assessable by the SBE under section 19.

The only issue before the *Western Oil* court was the circumstances under which prepayment tax relief was warranted: "The dispositive question in this case is not whether the Board has authority to assess lands and rights of way pursuant to its constitutional duty to assess intercounty pipelines, but whether the trial court had jurisdiction to bar the Board from requiring pipeline owners and operators to submit information on such property interests." (*Western Oil & Gas Assn.* v. *State Bd. of Equalization, supra,* 44 Cal.3d at pp. 212-213.)

The court held that prepayment tax relief was only available if there were "no conceivable basis in law or fact for assessing a tax on a given piece of property, . . ." (*Western Oil & Gas Assn.* v. *State Bd. of Equalization,* 44 Cal.3d at p. 214.)

It was in this context that the Supreme Court discussed the *Pipe Line Co.,* holding: "Our 1936 decision in *Pipe Line Co., supra,* 5 Cal.2d 253, did not expressly exclude lands and rights of way from the definition of pipelines

subject to assessment by the Board, however, and does not bar the Board from now asserting jurisdiction to assess such interest." (*Western Oil & Gas Assn.* v. *State Bd. of Equalization, supra,* 44 Cal.3d at p. 215.)

As to the effect its decision should have on any action to determine the scope and effect of section 19, however, the court emphasized: "We do *not* hold that the Board has the authority to assess those interests in land. That question can only be determined in an appropriate action for refund." (*Western Oil & Gas Assn.* v. *State Bd. of Equalization, supra,* 44 Cal.3d at p. 214, fn. omitted, italics in original.) The court added that because of the circumstances presented, it did not conduct a "searching review of the merits . . . ." (*Id.,* at p. 214, fn. 4.)

■ We have conducted that review and conclude that the propriety of the SBE centrally assessing lands and rights-of-way pursuant to section 14 was squarely before the *Pipe Line Co.* court.

Appellants would have us conclude that the absence of lands and rights-of-way from the definition of "pipeline" established in *Pipe Line Co.* somehow left as an open question whether the SBE (as opposed to county assessors) could tax those real property interests under section 14. Our review of the trial court record in that action will not permit such a conclusion.

The issue of whether lands and rights-of-way were considered part of a pipeline for section 14 taxation purposes was raised by the pleadings and tried by the court. The SBE's revised list of assessable properties was introduced late in the trial and still included rights-of-way among those items within its reach under section 14.

The trial court's findings of fact, conclusions of law and concomitant judgment state that it was defining "what constitutes an intercounty pipe line within the meaning of" section 14. The definition given was specific, detailed and limited to the line of pipe, certain fittings attached to the line, and an enumerated class of tanks, pumps and other *mechanical* objects which allow for the flow or storage of oil. No mention of real property interests of any kind was made. Under the rule of *expressio unius est exclusio alterius,* we find that real property interests were excluded from the court's definition of pipeline. (*Gilgert* v. *Stockton Port District* (1936) 7 Cal.2d 384, 387 [60 P.2d 847] [failure to include port districts in list of enumerated political subdivisions authorized by Cal. Const., art. XI, § 11 to exercise police powers meant that port districts did not possess such powers].)

The same holds true under the rule of *ejusdem generis* for SBE's assertion that the *Pipe Line Co.* court's use of the language "and so forth" in defining

an intercounty pipeline indicates an intention to include lands and rights-of-way. The language "and so forth" modifies a long list of pumps, boilers, tanks and valves which were held to be taxable by the SBE under section 14. (*Pipe Line Co.* v. *State Bd. of Equalization, supra*, 5 Cal.2d at pp. 256-257.) The quoted language comes at the end of the list, where the Supreme Court holds that those items are taxable under section 14 "when such pumps, tanks and so forth are essential and part of and necessary to the use and operation of the pipe line." (*Ibid.*) It cannot be read to allow for the assessability of items beyond the class enumerated: pumps, tanks, boilers and valves. (Civ. Code, § 3534.)

So too for appellants' reliance on the *Pipe Line Co.* court's use of the word "appurtenances" in discussing the definition of a pipeline. The court stated that a pipeline "includes not only the pipe, but the appurtenances necessary to its proper functioning as such. Evidence as to what were those appurtenances was submitted to the court below, and the finding of that court is, in our opinion, a reasonable and proper determination of the items constituting plaintiff's pipe line." (*Pipe Line Co.* v. *State Bd. of Equalization, supra*, 5 Cal.2d at p. 256.)

Appellants strain too far in concluding that the term "appurtenance" must have included appurtenances to land such as rights-of-way. Instead, when viewed in context, it is clear that the *Pipe Line Co.* court used "appurtenance" in its dictionary form as a term defining items which relate, pertain, or attach to another object. (Ballentine's Law Dict. (3d ed. 1969) p. 87, col. 1.)

The trial court in *Pipe Line Co.* found that certain mechanical items attached to the pipeline were necessary to its operation and thus taxable by the SBE under section 14. The *Pipe Line Co.* court was obviously referring to only those items as the necessary appurtenances of which the pipeline was comprised, thus excluding real property interests from its definition.[3]

The express purpose of the complaint in the *Pipe Line Co.* action was to eliminate uncertainty by obtaining a definition of what constituted a pipeline

---

[3]Neither does the SBE's midtrial revision of its list of assessable properties in *Pipe Line Co.* allow room to contend that "rights of way," which remained on the list, are not assessable under section 19 while "lands" are. We can find no basis—and none has been advanced by appellants—for distinguishing between the two kinds of real property interests such that we could fairly and logically conclude that the latter were intended to be taxed by the SBE but the former were not. Further, for the reasons already stated, we have concluded that the assessability of both lands and rights-of-way was squarely before the trial court in *Pipe Line Co.*

under section 14. This purpose was echoed in the petition for rehearing by which the Supreme Court reconsidered its earlier opinion and instead adopted and approved the trial court's findings and judgment as to what was within the SBE's reach under section 14. (*Pipe Line Co.* v. *State Bd. of Equalization, supra,* 5 Cal.2d 253 at pp. 256-257.) For the reasons stated above, we cannot hold that the trial court and Supreme Court both ignored this plea for certainty, and instead we construe the decision in *Pipe Line Co.* v. *State Bd. of Equalization, supra,* 5 Cal.2d 253, as barring the SBE from assessing the lands and rights-of-way of private, intercounty oil pipelines.[4]

Appellants also argue, both directly and by way of analogy, that private, intercounty pipelines should be treated and taxed based on their entire value as an ongoing system, in the same manner as public utilities. These arguments ignore the critical distinction which section 19 makes between private pipelines and public utilities, and for that reason they are fundamentally flawed.

Section 14 permitted taxation by the SBE of "All pipe lines . . . not entirely within the limits of any one county, *and all property . . . owned or used by*" public utilities. The current version, section 19, is substantially the same. The *Pipe Line Co.* court construed this language as establishing "two classes of property . . . first, pipe lines, flumes, etc., and, second, all property, other than franchises, of public utilities." (*Pipe Line Co.* v. *State Bd. of Equalization, supra,* 5 Cal.2d 253, 255.)

Section 14 allowed for the unit taxation of public utilities, in which all assets were valued as a unit, according to their value to the system as an ongoing whole. (*ITT World Communications, Inc.* v. *City and County of San Francisco, supra,* 37 Cal.3d 859 at pp. 863-864.)

"On the other hand, with respect to the assessment of '[a]ll pipe lines, flumes, canals, ditches and aqueducts not entirely within the limits of any one county,' the [SBE] has made its assessment under section 14 without regard to the nature of the taxpayer. Such assessments do not extend to all of the property of the owner but are confined to the intercounty pipe line. . . . *This administrative construction was expressly approved by the Supreme*

---

[4]While the *Pipe Line Co.* court expressed no rationale for favoring local assessment over central assessment of these real property interests, respondents assert that the counties are better equipped to value lands and rights-of-way because of the many inherently local factors which might affect the market value of those interests.

*Court of California in*" the *Pipe Line Co.* case. (29 Ops.Cal.Atty.Gen. 77, 78-79 (1957).)[5]

Section 14 was reenacted as section 19 virtually without change after being interpreted by both the Supreme Court in the *Pipe Line Co.* decision and by the Attorney General. While we do not pass upon respondents' contention that the SBE's 42-year-long abandonment of its claim to tax private pipeline real property interests constituted a binding administrative construction of section 14, the Attorney General's opinion does lend credence to our interpretation of section 19's scope.[6] ▉ (See *Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 791 [286 Cal.Rptr. 57] [Attorney General opinions are not binding authority, but are persuasive authority since we presume the Legislature is aware of the Attorney General's construction and would take corrective action if they believed the legislative intent had been misstated.].)

▉ In short, while California Constitution, article XIII, section 19, allows for the unit taxation of *all* public utility property, only those items deemed to constitute a private, intercounty pipeline may be assessed by the SBE. The Supreme Court in *Pipe Line Co. v. State Bd. of Equalization, supra,* 5 Cal.2d 253, defined those items as including various, enumerated mechanical parts, fittings and tanks necessary to its operation and affirmed a trial court judgment which excluded lands and rights-of-way. That definition is still the law.

### THE JUDGMENT AS TO RESPONDENTS' THREE AFFILIATED FACILITIES

▉ The second question we must answer concerns the trial court's findings that the Ventura Products Plant, Avila Wharf and Estero Bay Marine Terminal were not essential and necessary to the operation of respondents' intercounty pipelines.

▉ Under prior law, the trial court was not allowed to independently review the judgment of the SBE at the initial administrative refund hearings.

---

[5] Appellants' reliance on certain arguments put to the voters in deciding the fate of the 1933 amendment to section 14 is misplaced. While those arguments refer to section 14's effect on the taxation of public utilities, the *Pipe Line Co.* court has construed section 14 as establishing two levels of taxation on two classes of property: private, intercounty pipelines and public utilities. (*Pipe Line Co. v. State Bd. of Equalization, supra,* 5 Cal.2d at p. 255.) Despite this, and despite the parties' stipulated facts to the contrary, the county wrongly asserts that these admittedly private pipelines are in fact public utilities which should be taxed as such.

[6] If appellants truly believed that section 19 permitted the SBE to tax private, intercounty pipelines in the same manner as public utilities, we would expect appellants to have pressed for full unit taxation of all property owned by such pipelines. Their failure to do so further persuades us that the analogy to public utility taxation lacks merit.

(*Kaiser Center, Inc.* v. *County of Alameda* (1987) 189 Cal.App.3d 978, 982-983 [234 Cal.Rptr. 603].) Accordingly, our review of the judgment would be limited to determining whether substantial evidence supported the SBE's determination made during the administrative refund hearings. (*Paoli* v. *California Coastal Com.* (1986) 178 Cal.App.3d 544, 550 [223 Cal.Rptr. 792].)

Effective in 1989, however, Revenue and Taxation Code section 5170, vested the trial court in a tax refund action with the power of independent review, allowing it to consider all evidence relating to the valuation of the property, not just the evidence in the administrative record. That section is specifically applicable to assessments made under California Constitution, article XIII, section 19. (*Simms* v. *Pope* (1990) 218 Cal.App.3d 472, 476 [266 Cal.Rptr. 911].)

Where the trial court exercises the power of independent review, we determine whether substantial evidence supports the trial court's findings as opposed to those of the administrative agency involved. (*Paoli* v. *California Coastal Com.*, *supra*, 178 Cal.App.3d at p. 550.) Accordingly, our power begins and ends with the determination as to whether, on the entire record, there is substantial evidence contradicted or uncontradicted, to support the determination. (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925].) The evidence must be "of ponderable legal significance[,] reasonable in nature, credible, and of solid value; . . ." (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].)

On the record before us, we have no difficulty finding that ample evidence was presented to support the trial court's findings of fact. Taken as a whole, respondents' various declarations show that the three facilities were engaged in multiple uses and that the intercounty pipelines which terminated there were not essential to their operation.

Avila Wharf, for example, receives and loads products from intracounty pipelines. Historically, less than half its activity came from intercounty pipelines and when the wharf was closed for 21 months due to storm damage, the pipeline continued to run.

The Ventura Products Plant receives refined products by truck and pipeline. It is designed to load gasoline onto delivery trucks and is also used to mix additives to the fuel.

Finally, the Estero Bay facility is designed to receive crude oil from and load it on to tanker ships. It is also used to clean oil from the ballast tanks of those ships.

The only contrary evidence which appellants relied upon were the declarations of several SBE assessors and supervisors in which they concluded that the facilities were necessary and appurtenant to the operation of the intercounty pipelines. This is wholly insufficient to overcome appellants' evidence to the contrary. We, therefore, affirm the trial court's findings and judgment that those three facilities are not essential or necessary to the operation of respondents' intercounty pipelines and may not be assessed by the SBE under section 19.

## THE JUDGMENT WILL BE MODIFIED TO ALLOW FOR ESCAPE ASSESSMENTS FOR ALL TAX YEARS IN DISPUTE

Appellants contend that the judgment for a tax refund will allow respondents to avoid paying any taxes on the money refunded, since the statute of limitations has run on any escape assessments by the various county assessors.

Pursuant to California Revenue and Taxation Code section 531, property belonging on the local tax rolls which has escaped assessment shall be assessed by the county assessor for each year in which it escaped assessment. Under Revenue and Taxation Code section 532, the various county defendants have four years from July 1st of the year in which the taxes were levied to bring an action for an escape assessment. The parties agree that this is the method by which respondents will eventually pay their proper share of taxes on the disputed properties.

The tax years in dispute are: 1984-1985; 1985-1986; 1986-1987; and 1987-1988. The judgment reflects a separate stipulation by the parties that the statute of limitations for assessment of respondents' properties by county assessors is tolled "for the period beginning on the date the original complaint pertaining to such property was filed in the subject cases and ending on the date the judgment of the Superior Court, after exhaustion of all appeals, is final."

For the 1984-1985 tax year, the statute began to run on July 1, 1984, and therefore expired on July 1, 1988. Appellant Los Angeles County contends that since respondents' representative complaint was filed on June 29, 1989, the statute had already run on the 1984-1985 tax year. Taking this as the last possible date on which the action was filed, it does not appear that the statute had run on any of the other disputed tax years, since the statute on the 1985-1986 tax year would not have run until July 1, 1989.

The clerk's transcript did not contain any pleading which we could definitively fix as being the "original complaint" in this consolidated action.

A first amended complaint from November 1988 was included, as was Chevron's complaint from June 1989. Numerous other complaints must have been filed in these 15 consolidated actions, but none were made part of the clerk's transcript.

At trial, counsel for the parties discussed with the court a proposed stipulation to stay enforcement of the judgment, along with a proposal that the statute of limitations be tolled to allow for escape assessments by the county assessors. Counsel for respondents urged the court to adopt the proposed stay as part of the judgment: "And I say the simple way to do it is . . . you can stay collection. The county—we have already said—agreed will stipulate to that, too. That the statute of limitations is tolled back through the '84 tax year, the counties can make those assessments."

Counsel for the SBE agreed that judgment should be entered on those terms.

■ "All intendments favor the validity of a decree or judgment. Courts should interpret judgments in such a manner as to make them valid and with reference to the law regulating the rights of the parties." (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 678 [56 Cal.Rptr. 265, 423 P.2d 193].) A judgment must be construed in a manner which will support it, if the rules of construction permit. (*People* v. *Landon White Bail Bonds, supra,* 234 Cal.App.3d 66, 77.) "Particularly where it appears that an ambiguity is the result of oversight and inadvertence, 'the judgment as entered should be liberally construed with a view of giving effect to the manifest intent of the court.' [Citation]" (*Ibid.*).

Here, the court intended to render a judgment which would permit the assessors of the various county defendants to levy escape assessments on respondents' properties once the refunds ordered by the judgment were made. ■ Where a judgment fails to express the court's true intentions as they existed at the time of rendition, the court generally has power to correct the judgment accordingly. (*People* v. *Landon White Bail Bonds, supra,* 234 Cal.App.3d at p. 77.)

In order to carry out the court's true intention, the judgment must be modified to state that respondents will not assert by way of defense any statute of limitation, including but not limited to Revenue and Taxation Code section 532, applicable to the assessment by the appropriate defendant county of each property at issue in each of the subject cases as to all tax years in dispute in this action.

## DISPOSITION

The judgment of the trial court is affirmed, as modified. The court is directed to enter an amended judgment in accordance with this opinion. Each party will bear its own costs on appeal.

Grignon, Acting P. J., and Armstrong, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 3, 1993.