Filed 9/23/24  Thompson v. SF Markets CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARVIN THOMPSON, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> SF MARKETS, LLC, <br><br>     Defendant and Appellant. | A167659 <br><br> (Alameda County <br> Super. Ct. No. <br> 22CV016673) |

Defendant SF Markets, LLC doing business as Sprouts Farmers Market (SF Markets) appeals from an order denying its motion to compel arbitration of claims asserted by plaintiff and respondent Marvin Thompson. The trial court ruled that SF Markets breached the parties' arbitration agreement and waived its right to compel arbitration under Code of Civil Procedure section 1281.98[1] because it did not pay its share of the arbitration initiation fees by the statutory deadline.  In so ruling, the court rejected SF Markets' argument that its obligation to pay the fees had not come due, concluding that Thompson substantially complied with the requirements for initiating the arbitration.  On appeal, SF Markets contends the court erred,

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

1

while Thompson argues for the first time that SF Markets' payment of the fees, although late, waived any challenge to the way Thompson had initiated the arbitration.  Because Thompson did not serve the arbitration demand in the manner required by the parties' arbitration agreement and because SF Markets did not waive this requirement by paying the arbitration fees, we will reverse the order and direct the court to enter a new order compelling arbitration pursuant to the agreement.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Arbitration Agreement

The parties entered into a "Mutual Binding Arbitration Agreement" (Arbitration Agreement or Agreement) in connection with Thompson's employment with SF Markets.  The third paragraph of the Agreement required Thompson to submit all "claim[s]" (as defined) to final and binding arbitration administered by Judicial Arbitration and Mediation Services (JAMS) in accordance with the JAMS Employment Arbitration Rules & Procedures (JAMS Procedures).

The 10th paragraph of the Arbitration Agreement, titled "Initiation of Arbitration Process," sets forth the procedure for commencing arbitration: "Arbitration shall be initiated upon the express written notice of either party. Written notice of Team Member's claim *shall be mailed by certified or registered mail*, return receipt requested, *and by U.S. Mail*, to SFM, LLC, 5455 E. High Street, Suite 111, Phoenix, AZ 85054, attn: Labor & Employment Counsel."  (Italics added.)  Service of the notice would be "deemed effective on the earlier of the date the Team Member or [SF Markets] signs the return receipt or three days after the notice is sent by regular mail."  The Agreement further provided that it was "governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq."

2

B. <u>Thompson's Initial Class Action</u>

Notwithstanding the Arbitration Agreement, Thompson filed a putative class action against SF Markets in Alameda County Superior Court (*Thompson v. S.F. Markets, LLC* (Super. Ct. Alameda County, 2022, No. RG21102471)) (*Thompson I*), alleging claims for failure to provide meal periods and rest breaks, failure to pay hourly wages and overtime, violation of Labor Code section 227.3, inaccurate wage statements, failure to timely pay final wages, and unfair competition.

In response, SF Markets moved to compel arbitration of Thompson's individual claims and to dismiss his class claims. Thompson did not oppose, and the trial court granted the motion and referred Thompson's individual claims "to binding arbitration, *pursuant to the terms of the parties' arbitration agreement*." (Italics added.) The court also stayed the litigation pending completion of the arbitration.

1. <u>Thompson Purports to Initiate the Arbitration</u>

In June 2022, approximately eight months after the trial court ordered Thompson's claims to arbitration, Thompson used JAMS' online case management platform (JAMS Access) to submit to JAMS a Demand for Arbitration (Demand) of his individual claims.

On June 16, 2022, Thompson emailed a copy of the Demand to the attorneys who had represented SF Markets in *Thompson I*. However, he did not serve it "by certified or registered mail, return receipt requested, and by U.S. Mail, to SFM, LLC, 5455 E. High Street, Suite 111, Phoenix, AZ 85054, attn: Labor & Employment Counsel" as required by the Arbitration Agreement.

Thompson nonetheless provided JAMS with a proof of service of the arbitration demand, representing that the manner of service was "[b]ased on

3

a court order or an agreement of the parties to accept service by electronic transmission." To the contrary, neither the trial court's order nor SF Markets had authorized electronic service of the Demand.

On June 17, 2022, JAMS emailed to SF Markets' attorneys a "Notice of Intent to Initiate Arbitration" letter, along with an invoice (identified as a Deposit Request) for a non-refundable filing fee in the amount of $1,750 "due upon receipt." The Deposit Request was "[b]ill[ed] [t]o" SF Markets' counsel; it was not billed or emailed to SF Markets.

On July 28, 2022, SF Markets' attorneys paid the Deposit Request 41 days after it issued. SF Markets represents in its opening brief that the incorrect payor information on the Deposit Request accounted for payment not being made until July 28; the page it cites in the record, however, does not say this.

On August 10, 2022, having seen on JAMS' case management website that SF Markets had paid the fees, Thompson's lawyer emailed JAMS and SF Markets' attorneys to find out the date of payment. SF Markets' attorneys responded to Thompson's counsel by email the next day, complaining that Thompson's arbitration demand had not complied with the requirement in the Arbitration Agreement to provide "written notice by certified or registered mail, return receipt requested, and by U.S. mail, to SFM, LLC 5455 E. High Street, Suite 111, Phoenix, AZ 85054" and objecting to JAMS' issuance of the Deposit Request in light of the improper service. SF Markets requested that JAMS "withdraw the previously issued invoice, and re-issue only upon proof of service in compliance with the arbitration agreement['s] notice provisions." Meanwhile, Thompson's lawyers told JAMS that SF Markets had waived arbitration by failing to pay the filing fees on time,

4

asked JAMS to stay the arbitration proceedings, and said Thompson would "move the court to set aside the arbitration order."

On August 22, 2022, JAMS confirmed that it received SF Markets' payment on July 28, 2022. JAMS paused its administration of the arbitration pending the parties' agreement or court order.

That same day, instead of moving in *Thompson I* to set aside the arbitration order as they said they would, Thompson's lawyers filed a new and separate putative class action in Alameda County Superior Court *Thompson v. S.F. Markets (Super Ct. Alameda County,* 2022, No. 22CV016673*) (Thompson II)*.[2]

### 2. SF Markets Moves to Compel Compliance in *Thompson I*

SF Markets filed a motion in *Thompson I* to compel Thompson's compliance with the trial court's earlier order to arbitrate. SF Markets argued that Thompson had not properly initiated arbitration, so JAMS' invoice was premature, the fees were not yet due, and SF Markets had not waived arbitration. Thompson opposed, arguing that rule 4.2 of the ABA Model Rules of Professional Conduct (ABA Model Rule 4.2) and rule 4.2 of the California Rules of Professional Conduct (CRPC 4.2) prevented Thompson's counsel from sending the arbitration demand directly to SF Markets, so he served the demand on SF Markets' lawyers by the email method they

---

[2] Filing a duplicate lawsuit was improper. Although section 1281.97 allows an employee to commence litigation if the employer does not timely pay its arbitration fees, it does not entitle the employee to file a *second* lawsuit (and incur another filing fee for the client) to assert claims that are already the subject of existing litigation and the subject of an order compelling their arbitration. (See *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1066 (*Williams*).) The parties do not address this issue, and we need not analyze it further to resolve the appeal.

5

established for serving other documents in *Thompson I*. In a reply brief, SF Markets disagreed.

The trial court denied SF Markets' motion, stating, "It appears to this court that [Thompson] has complied with the court's order."

C. SF Markets Moves to Compel Arbitration in *Thompson II*

Following the denial of its motion in *Thompson I*, SF Markets filed a motion to compel arbitration in *Thompson II*. SF Markets again argued that Thompson had not properly initiated arbitration, so its failure to pay the arbitration fees on time was immaterial. It also argued that section 1281.97 is preempted by the FAA.

Thompson opposed the motion and again argued, as relevant here, that the ABA Model Rules and the CRPC prevented counsel from sending the arbitration demand directly to SF Markets in compliance with the Arbitration Agreement. Thompson further argued that the FAA did not preempt section 1281.97.

The trial court denied the motion. In its written order, the court stated that it was "not reconsidering its finding that the arbitration is valid" but was considering whether the agreement should be rescinded. The court concluded that SF Markets "waived its rights to arbitrate this dispute as it materially breached the arbitration agreement by failing to pay the filing fees required to continue the arbitration within thirty days after the due date."

The trial court further ruled that SF Markets could not "resist this conclusion by claiming that [Thompson] did not properly initiate arbitration because '[he failed to serve the arbitration demand] by certified or registered mail, return receipt requested, or by U.S. mail,' " to the address stated in the Arbitration Agreement. The court reasoned: "[Thompson] substantially complied with the arbitration agreement's requirements to ensure that [SF

6

Markets] had notice of the demand for arbitration. Under the facts of this case, [Thompson's] partial performance was sufficient to initiate arbitration. [Citation.] Moreover, there is no doubt that [SF Markets] received timely notice of the initiation of arbitration through the notice provided to its counsel, a notice that the prior judge found sufficient to comply with his order to submit this matter to arbitration."

SF Markets timely appealed (see § 1294).

## II. DISCUSSION

Section 1281.97, subdivision (a)(1) provides that the initial arbitration fees must be paid within 30 days after they become due, or the party who drafted the arbitration agreement will be deemed to have waived its right to compel arbitration. The subdivision reads: "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed, *if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date* the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2." (Italics added.)

The obligation to pay the initial arbitration fees and the date for calculating the payment deadline are triggered by the arbitrator's issuance of an invoice. (§ 1281.97, subd. (a)(2).) The invoice cannot be issued, however, until the claimant meets the "filing requirements necessary to initiate an arbitration." Specifically, section 1281.97, subdivision (a)(2) states: "*After an employee or consumer meets the filing requirements necessary to initiate an arbitration*, the arbitration provider shall immediately provide an invoice for any fees and costs required before the arbitration can proceed to all of the

7

parties to the arbitration. . . . To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt." (Italics added.)

If the initial arbitration fees are not paid within the 30 days, and the drafter of the arbitration agreement is deemed to have waived its right to arbitrate, the claimant may either "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction" or "[c]ompel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." (§ 1281.97, subd. (b).)[3]

Strictly enforcing section 1281.97 (*Espinoza, supra*, 83 Cal.App.5th at p. 775), we find that SF Markets did not waive its right to arbitrate by failing to timely pay the initial arbitration fee because: (1) Thompson did not serve his arbitration demand in the manner required by the Arbitration Agreement; (2) Thompson did not substantially comply with the Agreement's service requirement; and (3) nothing prevented Thompson from complying with that requirement. We also find that SF Markets did not waive the method of service required by the Agreement by paying the fee late.

---

[3] The trial court did not decide SF Markets' motion under section 1281.97 but under section 1281.98, which imposes a similar 30-day deadline to pay "during the pendency of an arbitration proceeding" any fees or costs invoiced "for the arbitration proceeding to continue." (§ 1281.98, subd. (a)(1), (2).) But because the payment pertained to the arbitration provider's initial invoice, the applicable statute was section 1281.97. (*Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 775 (*Espinoza*); *Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1077; *Williams*, *supra*, 86 Cal.App.5th at pp. 1065–1066.) The parties' briefs refer only to section 1281.97, and we will analyze the matter under that statute. (See *Williams,* at pp. 1065–1066 [the procedures and remedies under section 1281.97 and section 1281.98 are " 'largely parallel,' however, and require no different analysis"].)

A.     Thompson Did Not Properly Initiate Arbitration

Because Thompson did not serve his arbitration demand by mail to SF Markets at its office address as required by the Arbitration Agreement, SF Markets had no obligation to pay any arbitration fees under section 1281.97.

Under section 1281.97, SF Markets' statutory obligation to pay fees within 30 days would begin upon the issuance of the arbitrator's invoice *after* Thompson met the "filing requirements necessary to initiate an arbitration." (§ 1281.97, subd. (a)(2).)  Section 1281.97 does not define the "filing requirements necessary to initiate an arbitration."  But it is a " 'fundamental principle that arbitration is a matter of contract,' " and arbitration agreements must be enforced "according to their terms."  (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.)  Therefore, in this case, the "filing requirements necessary to initiate an arbitration" must be found in the Arbitration Agreement and the JAMS Procedures it references.

Section 3 of the Arbitration Agreement mandated that claims "shall" be submitted to arbitration in accordance with the JAMS Procedures.  Those Procedures condition the initiation of arbitration on the employee filing a proof of service of the arbitration demand.  For example, the JAMS forms explain that a "Demand is considered submitted for JAMS' purposes when the following items have been received by JAMS:  [¶] . . . Demand for Arbitration form or the equivalent; [¶] . . . *Proof of service of the Demand on all other Parties*; [¶] . . . Copy of the entire contract that contains the arbitration agreement, Court Order (if applicable), and/or Stipulation (if applicable); [¶] . . . Applicable Filing Fee."  (Italics added.)  Rule 5 of the JAMS Procedures, titled "Commencing an Arbitration," states that the requirements are met when JAMS receives, among other things, "evidence that the Demand for Arbitration has been served on all Parties."

9

Moreover, the *manner* of service must comply with the parties' arbitration agreement. As JAMS instructs regarding the content of the proof of service, the parties should "*check the terms of their arbitration contract or any applicable law.*" (Italics added.)[4] Here, paragraph 10 of the Arbitration Agreement—titled "Initiation of Arbitration Process"—specified that "express written notice" of the arbitration "*shall* be mailed by certified or registered mail, return receipt requested, and by U.S. Mail, to SFM, LLC, 5455 E. High Street, Suite 111, Phoenix, AZ 85054, attn: Labor & Employment Counsel." (Italics added.) Service of the arbitration notice does not take effect unless a return receipt is signed or three days after the notice was sent by regular mail.

In short, to meet the "filing requirements necessary to initiate an arbitration" (§ 1281.97, subd. (a)(2)), Thompson had to provide JAMS with proof that the Demand was served by certified or registered mail with return receipt requested, as well as by U.S. mail, to the address indicated in the Arbitration Agreement.

Here, Thompson did not send his Demand by certified or registered mail with a return receipt requested. He did not serve it by U.S. mail. He did not send it to the party or address required by the Arbitration Agreement. He therefore did not properly initiate the arbitration under the Agreement, and service of the Demand never became effective. The proof of service Thompson sent to JAMS was not based on valid service of the Demand or proper initiation of arbitration under the parties' Arbitration Agreement.

---

[4]     SF Markets filed a request for judicial notice of a bill analysis related to section 1281.97 and certain JAMS forms. Although the material was not before the trial court when it ruled on SF Markets' motion, Thompson does not object to the request and his respondent's brief cites to some of the JAMS materials. We therefore grant the request.

10

Accordingly, Thompson did not meet the "filing requirements necessary to initiate an arbitration" under section 1281.97. (See *Luafau v. Affiliated Computer Servs.* (N.D. Cal. Sept. 12, 2006) 2006 WL 2619365, at *2–3 [where the parties' "Dispute Resolution Procedure" (DRP) required that the employee initiate arbitration by submitting a claim to the DRP administrator, "[t]he fact that no other procedure is specified means that no other procedure is permissible," and the plaintiff's failure to submit the claim meant the defendants were not in default for failing to pay the arbitrator's filing fee].) And because Thompson did not meet the "filing requirements necessary to initiate an arbitration" under section 1281.97, JAMS' invoice was not authorized by that statute, and SF Markets' failure to pay by the statutory deadline did not waive its right to arbitrate. The trial court therefore erred in denying SF Markets' motion to compel arbitration.

B.     No Substantial Compliance

The trial court did not find—and Thompson does not contend—that Thompson did what he was supposed to do under the Arbitration Agreement to serve the Demand and initiate the arbitration process. Instead, the court ruled that Thompson's "substantial[]" compliance with the Agreement's service requirements was enough. Thompson did not focus on a substantial compliance theory in its briefs opposing SF Markets' motion to compel, and his respondent's brief paid little attention to the court's theory, venturing instead into a new and different theory of waiver (which we reject later in this opinion).

In any event, even assuming for purposes of argument that the substantial compliance doctrine applies here, the evidence before the trial court did not support a conclusion that Thompson substantially complied with the requirements for initiating arbitration. Thompson provides no

11

authority that an obligation to serve an arbitration demand by certified or registered mail with return receipt requested, as well as by regular mail, to a party at a designated address, is substantially performed by sending it by email to someone else at a different address. The service requirements in the Arbitration Agreement were clear, simple, and not burdensome. Thompson's decision to do something entirely different did not constitute substantial compliance. Indeed, SF Markets presumably required that all arbitration demands be sent by certified or registered mail to its inhouse "Labor & Employment Counsel" to ensure that a person designated by SF Markets to handle those demands actually received the demand in a timely fashion and could ensure compliance with any obligations triggered by that demand. (See *Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 701 ["substantial compliance doctrine . . . is 'commonly understood to mean "compliance with the substantial or essential requirements of something (as a statute or contract) that satisfies its purpose or objective even though its formal requirements are not complied with" ' "].)

C.   Thompson's Ethics Argument

Thompson argues that CRPC 4.2 and ABA Model Rule 4.2, which generally preclude a lawyer from communicating with persons known to be represented by counsel, barred his lawyers from sending the Demand in the manner required by the Arbitration Agreement. As a result, he argues, his lawyers properly emailed the Demand to SF Markets' counsel just as they served other documents by email in *Thompson I.* The trial court did not embrace this argument, and neither do we.

CRPC 4.2(a) provides: "In representing a client, a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the

matter, unless the lawyer has the consent of the other lawyer." However, CRPC 4.2(c) states that this rule does not prohibit "communications otherwise authorized by law or a court order." ABA Model Rule 4.2 is essentially identical.

Nothing in CRPC 4.2 or ABA Model Rule 4.2 prohibited service of the Demand in accordance with the terms of the Arbitration Agreement. The rules govern a *lawyer's* communications with a represented person; Thompson, who is not a lawyer, could have served the Demand directly on SF Markets.

Furthermore, a lawyer's service of a legal notice consistent with the terms of the parties' contract—particularly where, as here, a court has ordered arbitration to be commenced in accord with that contract—falls within the exception under CRPC 4.2(c) for communications "authorized by law or a court order."

In addition, the rule against lawyers communicating with a represented person does not apply when the lawyer has the consent of the person's lawyer. (CRPC, rule 4.2.) Thompson's counsel could have asked SF Markets' lawyers for permission to serve SF Markets consistent with the terms of the Arbitration Agreement (or for SF Markets' lawyers to accept service on their client's behalf). For all these reasons, Thompson's urging that his lawyers' ethical obligations made it impossible to comply with the Arbitration Agreement is meritless.

Finally, even if the ethics rules did justify service of the Demand upon SF Markets' attorneys, Thompson's service of the Demand *by email* rather than registered or certified mail did not suffice. Thompson argues that counsel used email to serve each other with documents they filed with the trial court in *Thompson I*, pointing to proofs of service of court filings such as

13

a case management statement. But that argument is unpersuasive for two reasons. First, service of routine court documents is not the same as service of an arbitration demand; the parties' only agreement regarding service of the Demand was in the Arbitration Agreement, which did *not* allow email service. Second, as a matter of law, party agreements to email service *do not extend to documents that are to be served by certified or registered mail.* (Cal. Rules of Court, rule 8.78(a)(1)(B) [party agreement for electronic service applies only to documents authorized to be served by mail, express mail, overnight delivery, or fax transmission]; § 1010.6, subd. (a)(2) ["If a document is required to be served by certified or registered mail, electronic service of the document is *not authorized*," italics added)].)

Accordingly, the trial court erred in denying SF Markets' motion to compel arbitration.

### D. <u>Thompson's New Waiver Argument</u>

Thompson argues that a party can waive a term of an arbitration agreement, such as the method of service for an arbitration demand, and that waiver may occur by conduct. (See *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418; *Medico-Dental Bldg. Co. v. Horton & Converse* (1942) 21 Cal.2d 411, 432.) On this basis, he contends that SF Markets' payment of the invoiced fees without objecting to the invoice or Thompson's method of service waived its right to challenge the way Thompson served the Demand. The argument is unavailing.

In the first place, Thompson did not raise this argument in the trial court. As a result, the court had no opportunity to consider the argument, and SF Markets had no opportunity to rebut it. Furthermore, as Thompson acknowledges, waiver involves significant factual issues. (See *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.* (1994) 30

14

Cal.App.4th 54, 60 [waiver requires clear and convincing evidence of an "intentional relinquishment of a known right after knowledge of the facts"].) The court had no opportunity to make findings on those issues.

Thompson claims that the trial court *did* make "a factual determination that [SF Markets] waived its contractual right to enforce strict compliance with the provisions in the arbitration agreement with respect to initiating an arbitration." But that is not true. The court's order does not mention the idea of SF Markets waiving its right to challenge *how Thompson initiated arbitration* by paying the arbitration fees. Instead, it ruled that SF Markets "waived its rights *to arbitrate this dispute*"—the substantive claims Thompson brought in his complaint—by *failing* to pay the filing fees within 30 days. It rejected SF Markets' argument regarding Thompson's inadequate attempt to initiate arbitration not on the ground of waiver, but on the ground that Thompson had substantially performed.

Finally, we find no evidence that SF Markets intentionally relinquished a known right to argue that Thompson failed to properly initiate arbitration if Thompson challenged the timing of its payment. To the contrary, just one day after Thompson brought the tardiness of the payment to SF Markets' attention, SF Markets' counsel, "specially appearing on behalf of [SF Markets]," responded that Thompson "had failed to properly initiate arbitration." SF Markets' counsel explained: "Pursuant to the Arbitration Agreement, in order to initiate arbitration [Thompson] was required to give written notice by certified or registered mail, return receipt requested, and by U.S. mail, to SFM, LLC 5455 E. High Street, Suite 111, Phoenix, AZ 85054." Thompson cites no case holding that the mere payment of arbitration fees, without more, should be deemed a waiver of the right to contend that arbitration had not been properly commenced.

15

We will reverse the order denying SF Markets' motion to compel.[5]

## III. <u>DISPOSITION</u>

The order is reversed. The trial court is directed to enter a new order compelling arbitration pursuant to the parties' Arbitration Agreement.

CHOU, J.

We concur.

JACKSON, P.J.

SIMONS, J.

(*Thompson v. SF Markets* A167659)

---

[5] Because we reverse the trial court's decision on the ground that SF Markets did not waive its right to arbitrate under section 1281.97, we need not and do not address SF Markets' alternative argument that section 1281.97 is preempted by the FAA.