Filed 7/31/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RANCHO PAUMA MUTUAL WATER COMPANY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> YUIMA MUNICIPAL WATER DISTRICT, <br><br> Defendant and Appellant. | D065153 <br><br><br> (Super. Ct. No. 162650) |

APPEAL from an order of the Superior Court of San Diego County,

Robert P. Dahlquist, Judge.  Affirmed.

California Appellate Law Group, William N. Hancock, Audra Ibarra, Benjamin S.

Feuer; Kidman Law, Arthur G. Kidman, Andrew B. Gagen; Law Offices of Scott &

Jackson, Jeffrey G. Scott and James R. Dodson for Defendant and Appellant.

Rutan & Tucker, Jeremy N. Jungreis, Karen E. Scott and Michelle D. Molko for

Plaintiff and Respondent.


Rancho Pauma Mutual Water Company (Rancho Pauma) filed a petition to

enforce a water rights judgment against the Yuima Municipal Water District (the District)

entered about 60 years earlier. The District appeals the trial court's order, contending the trial court misunderstood subsequent amendments to the judgment and improperly limited the amount of water the District could withdraw. Rancho Pauma contends the appeal should be dismissed as the order is not appealable. We reject Rancho Pauma's argument regarding appealability of the order. We also reject the District's arguments and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 1950, six plaintiffs (the Strub Plaintiffs) who owned parcels of land in Pauma Valley sued the owner of a nearby parcel of land, known as the Rincon Ranch, as well as the water company, Palomar Mutual Water Company (Palomar), that held and controlled all of the water rights to the Rincon Ranch. The Strub Plaintiffs sought to limit the defendants' right to draw groundwater from a defined portion of a groundwater basin beneath Pauma Valley, which the parties refer to as the Strub zone. The Strub Plaintiffs alleged that the Rincon Ranch defendants had gone outside the boundaries of the Rincon Ranch, purchased a 50 feet by 50 feet plot of land overlying the Strub zone, drilled a well on that small lot, and were appropriating water from that well via pipeline to the Rincon Ranch.

In 1953, the parties settled the action with a stipulated judgment (the Judgment). The Judgment stated that Palomar controlled the water rights to the Rincon Ranch subject to the limitations set forth in the Judgment, which limitations were "imposed for the purpose of limiting [Palomar's] use of said waters as against the [Strub] Plaintiffs in this action, which limitations shall inure solely to the benefit of [the Strub] Plaintiffs and their

2

respective heirs, successors and assigns." The Judgment provided that none of the waters derived from the Rincon Ranch shall be used by Palomar on more than 900 acres of the Rincon Ranch. Paragraph XI of the Judgment provided that Palomar was enjoined from withdrawing more than 1,350 acre-feet of water in any one calendar year (AFY), from the Strub zone. The Judgment stated that the court "retain[ed] jurisdiction of th[e] action to effectuate and enforce the terms of this [Judgment]" and "any of the parties hereto, or the successors in interest of any such party, may invoke the jurisdiction" of the court.

In 1963, Palomar sponsored the creation of the District, a public entity under the Municipal Water District Law of 1911, to import water into the Pauma Valley area. (Wat. Code, § 71000 et seq.) That year, a special election approved the creation of the District. In 1964, after Palomar petitioned, the trial court amended the Judgment to permit Palomar to change its stock structure so it could purchase imported water from the District. In 1967, in conformity with the Municipal Water District Law of 1911, the District formed a special improvement district, Improvement District A.

In 1968, the District entered into an agreement with Palomar to acquire substantially all of Palomar's assets and properties, including all of its water rights. That same year, Palomar filed an application to modify the Judgment and authorize transferring its facilities and water rights to the District. The application recited that Improvement District A "constitutes the service area of [Palomar]" and is generally known as the Rincon Ranch. The District created Improvement District A to allow it to enter into a contract with Palomar to acquire land, a water distribution system and to operate the system. Palomar asked the court for relief from the provision in the Judgment

3

that limited it to using Strub zone water on only 900 acres of the Rincon Ranch. Palomar alleged that the provisions of the Judgment enjoining it "from withdrawing more than 1,350" AFY and "restricting the use of that water on no more than 900 acres merely duplicate the basic limitations as to the total amount of local water tha[t] can be developed and, since imported water is now available and is being used on lands within [Palomar's] service area comprising a total of more than 900 acres, render the said 900 acre limitation meaningless, confusing and ineffective." (Improvement District A is substantially the same land as that described in paragraph VIII of the Judgment and commonly known as the Rincon Ranch. Accordingly, depending on the context, this opinion may refer to the lands known as Improvement District A as the "Rincon Ranch.")

The trial court amended the Judgment (the 1968 Amendment) to allow Palomar to transfer to the District all of its lands, water systems and water rights, subject to the terms of the Judgment. Thereafter, the court substituted the District in place of Palomar in the Judgment, ordered the District "to comply with the terms and conditions of [the Judgment]" and dismissed Palomar. At some point in time, the District created two water operation systems, one to serve Improvement District A and another "General District" to serve the rest of the District. In 1979, the Strub Plaintiffs and the District stipulated to amend the Judgment to allow the District to develop two new wells in the Rincon Basin because its existing wells were insufficient to allow the District "to utilize its allotted 1350 acre feet" during peak service demand periods.

V/O Pauma Development, L.P. (V/O) is a successor in interest to one of the original Strub Plaintiffs. In 2010, V/O, in cooperation with the District, established a

4

well on its own property within the Strub zone and began to sell water from that well to the District for use in the General District, but not Improvement District A. The District entered into an agreement with V/O wherein the District agreed to provide water service to V/O's property in exchange for the right to pump up to 797 AFY of water from a high-yield well that the District leased and controlled. In 2011, the District increased its production of groundwater from the Rincon Basin to 2,139 AFY, and 2,641 AFY during fiscal year 2012-2013.

In May 2013, Rancho Pauma, as the successor in interest to the Strub Plaintiffs, filed a "Petition Under Continuing Jurisdiction of Court to Enforce Water Rights Judgment," (the Petition) naming the District and V/O as parties. The Petition requested the court make a number of findings, including a finding that the District has violated the Judgment by pumping more than 1,350 AFY from the Rincon Basin. After a two-day hearing, the trial court decided the matter based on the various exhibits and declarations presented by the parties. After considering Rancho Pauma's proposed statement of decision and the objections of the District and V/O, the trial court issued its final order.

The trial court noted the main dispute involved the interpretation of paragraph XI of the Judgment. Rancho Pauma argued that paragraph XI created a "hard cap" of 1,350 AFY that the District could receive from the Strub zone. The District argued that paragraph XI allowed it to receive 1,350 AFY for use in Improvement District A, but imposed no limit on the amount of water it may extract from the Strub zone for distribution in locations other than Improvement District A. The trial court rejected the District's argument and concluded that paragraph XI of the Judgment was correctly

5

interpreted to impose a hard cap of 1,350 AFY on the District. Finally, the court made no orders against V/O, believing it would be acting in excess of its jurisdiction by doing so.

The District appealed from the order. The trial court later denied the District's motion to enforce an automatic appellate stay of the order. The District filed a petition for writ of supersedeas, which this court denied.

DISCUSSION

I. *Appealability*

Citing *City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595, Rancho Pauma argues the appeal should be dismissed because a stipulated judgment is not appealable and a postjudgment order is only appealable when the earlier judgment is itself appealable. We reject this contention. This rule is inapplicable where, as here, the stipulated judgment expressly reserved jurisdiction for the court to effectuate and enforce the terms of the stipulated judgment in a water rights case. (*Water Replenishment Dist. of Southern California v. City of Cerritos* (2012) 202 Cal.App.4th 1063, 1069-1070.)

II. *Standard of Review*

The meaning and effect of a judgment are determined according to the rules governing the interpretation of writings generally. If a judgment is ambiguous, we may examine the entire record to determine its scope and effect, including the pleadings. (*Southern Pacific Pipe Lines, Inc. v. State Bd. of Equalization* (1993) 14 Cal.App.4th 42, 49.) "'[T]he primary object of all interpretation is to ascertain and carry out the intention of the parties.'" (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238 (*City of Manhattan Beach*).) To ascertain the intent of the parties, we must first resort to

6

the language of the contract itself. (*Machado v. Southern Pacific Transportation Co.* (1991) 233 Cal.App.3d 347, 359.) We may also consider extrinsic evidence where it will assist in determining a contract's meaning: " '[T]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.]' [Citation.]" (*City of Manhattan Beach*, at p. 246.) "When a trial court's interpretation of a written agreement is appealed and no conflicting extrinsic evidence was admitted, the interpretation of the contract is a question of law which we review de novo. [Citations.]" (*Nava v. Mercury Casualty Co.* (2004) 118 Cal.App.4th 803, 805.)

### III. *Analysis*

The District contends we should reverse the 2013 postjudgment order because the trial court incorrectly interpreted the Judgment, as amended in 1968, to limit the water the District may withdraw from the Strub zone for use in its General District. The District tenders three main arguments. First, the District asserts the trial court misunderstood what occurred in 1968 and erroneously found that the District as a whole (both Improvement District A and the General District) became bound by the Judgment through the 1968 Amendment. The District claims the trial court committed this error because it failed to read the 1968 Amendment in light of the extrinsic evidence, which shows the parties and the court intended to bind only Improvement District A to the Judgment. Second, the District contends the 1968 court had no jurisdiction to bind the

7

District as a whole to the terms of the Judgment through a motion to modify that Judgment. Finally, the District asserts the trial court should have recognized that the Judgment essentially created an easement involving water rights, but that easement neither burdens nor benefits the General District, so the parties could not have intended to nor effectively applied the Judgment to the General District. We address each argument in turn.

A. Meaning of the Judgment and 1968 Amendment

Before turning to the 1968 Amendment, we address the Judgment and the trial court's interpretation of the Judgment. The Judgment stated in paragraph XI: "Defendants, and each of them, their employees, agents and persons claiming under or through them, are forbidden to, and enjoined from, withdrawing more than one thousand three hundred fifty (1,350) acre-feet of water in any one calendar year, from [the Strub zone]. All water obtained by said Defendants from said sources shall be taken only in conformity with the provisions of this [J]udgment." The Judgment also provided that none of waters derived from the Rincon Ranch shall be used by Palomar on more than 900 acres of the Rincon Ranch.

The trial court concluded that the plain language of paragraph XI "impose[d] a hard cap of 1,350" AFY on the District "regardless of where that water was going to be used." It reasoned that "[i]f the original parties, and/or the Court, had intended that the limitation created by [paragraph] XI was only applicable if the extracted water was used in a particular area, such as the Rincon Ranch or Improvement District A, then the parties and/or the Court could easily have said so. For example, [paragraph] XI could have been

8

written as follows: 'Defendants are enjoined from withdrawing, from the Strub zone, more than one thousand three hundred fifty (1,350) acre-feet of water in any one calendar year for use in the Rincon Ranch, but defendants may withdraw, from the Strub zone, an unlimited amount of water for use in any locations other than the Rincon Ranch.'" (Italics deleted.) The trial court noted that the circumstances surrounding the Judgment did not support the District's argument as the District's "proposed interpretation would, in effect, provide no meaningful limitation on defendants' rights to extract groundwater in the Strub zone. There would be no reason for the original plaintiffs to agree to such an illusory arrangement." (Italics deleted.)

The District does not challenge the trial court's interpretation of the Judgment. In fact, it admitted in its application for the 1968 amendment that the Judgment enjoined it "from withdrawing more than 1,350" AFY. Instead, the District seeks to avoid the 1,350 AFY hard cap by arguing the parties intended the 1968 Amendment to bind only the metes and bounds of the land known as "Improvement District A" to the 1,350 limit as the direct successor in interest to Palomar. In other words, the District contends the General District is not bound by the Judgment, it has never violated the Judgment because it has never taken more that 1,350 AFY for use on the land known as Improvement District A, and it can take an unlimited amount of water from the Strub zone as long as that water is used in the General District. The District argues the 1968 Amendment is ambiguous and urges us to consider extrinsic evidence to interpret the 1968 Amendment.

We start by examining the provisions of the 1968 Amendment. The 1968 Amendment eliminated the restriction requiring that water removed from the Strub zone be used on no more than 900 acres of the Rincon Ranch. It also allowed Palomar to carry out its contemplated transaction with the District to transfer to the District all of its lands, water systems and water rights and provided that all transfers Palomar "may make in carrying out the purpose and intent of said agreement with [the District] shall be made subject to the terms" of the Judgment as modified by a 1964 order and the instant order. About two months later, the court issued the following order: "[The District] is substituted as a defendant herein in place and instead of said [Palomar] and is ordered and directed to comply with the terms and conditions of the judgment of this Court dated November 10, 1953, as said judgment has been modified. . . ." The order then dismissed Palomar from the action.

The District contends the order is ambiguous on its face because it orders the District to comply with "the terms and conditions" of the Judgment. In its opening brief, the District contends that while the 1968 Amendment may appear to apply to the District as a whole, reference to extrinsic evidence shows that the goal of the modification was to replace Palomar with Improvement District A. In its reply brief, the District changes its argument, positing that the language of the 1968 Amendment "begs the question" as to what terms it must comply with and it is necessary to look at and construe the Judgment to determine the intent of the 1968 Amendment.

Ambiguity is defined as "an unclear, indefinite, or equivocal word, expression, meaning, etc." (Random House Unabridged Dict. (2d ed. 1993) p. 64, col. 3.) A word or

expression is said to be ambiguous when it is "open to having several possible meanings or interpretations." (*Ibid.*) Ambiguities in a written instrument are either patent (arising from the face of the writing) or latent (based on consideration of extrinsic evidence). (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360.)

The language of the 1968 Amendment is not patently ambiguous. The clear language suggests a single meaning—that the District was substituted into this action in place of Palomar and the District is the entity bound by the Judgment. A reader of the 1968 Amendment could not come to the conclusion that the parties intended to bind only Improvement District A, not the entire District to the Judgment and the 1,350 hard cap contained therein. Additionally, the requirement in the 1968 Amendment that the District comply with the "terms and conditions" of the Judgment does not create an ambiguity. The Judgment imposed a 1,350 limit on Palomar and the 1968 Amendment bound the District to that limit as Palomar's successor.

In an attempt to advance its position, the District contends the 1968 Amendment refers to it and not Improvement District A as the named defendant because an improvement district has no independent power to sue or be sued; thus, the parties had no choice but to name the District as the defendant. Assuming the validity of these arguments, if the parties mutually agreed to bind only Improvement District A, not the entire District to the Judgment, then some effort should have been made to express this purported mutual intent in the 1968 Amendment. The parties did not do so.

"[A] contract apparently unambiguous on its face," however, "may still contain a latent ambiguity that can only be exposed by extrinsic evidence." (*Wolf v. Walt Disney*

11

*Pictures & Television* (2008) 162 Cal.App.4th 1107, 1133.) Rancho Pauma contends the District forfeited the issue of latent ambiguity by failing to raise this issue below. Had the District raised an issue of latent ambiguity, Rancho Pauma asserts it would have countered the District's extrinsic evidence with its own evidence of what occurred in 1968 and the intent of the parties at that time.

Generally, a party "may not for the first time on appeal change the theory upon which the case was tried." (*Curcio v. Svanevik* (1984) 155 Cal.App.3d 955, 960.) Our review of the District's opposition to Rancho Pauma's petition shows the District never expressly argued that the 1968 Amendment was patently or latently ambiguous. While the District argued in its supplemental brief that the amended judgment was ambiguous and thus could not support a contempt citation, it never specifically argued that the Judgment, as modified by the 1968 Amendment, bound only Improvement District A, not the entire District to the Judgment and to the 1,350 AFY limit. The reporter's transcript of the hearing similarly shows the District never expressly argued that the 1968 Amendment was patently or latently ambiguous. Rather, the District argued several times during the hearing the general notion that "[w]hen [the District] agreed to step into the shoes of the Rincon Ranch and [Palomar in 1968, it] became subject to the judgment in that capacity" and "there is not a single sentence or word that would indicate . . . that [the District] agreed to or intended to become bound by that judgment" throughout its entire service area. Alluding to an issue of ambiguity during oral argument in a case involving numerous documents is insufficient to preserve the issue. Notably, the lack of any mention in the trial court's proposed order shows, that based on the arguments

12

presented, the trial court was not on notice of any issue involving interpretation of the 1968 Amendment.

In its response to Rancho Pauma's proposed statement of decision, the District asked the trial court to make six additional findings, including whether the 1968 Amendment prohibits the District from withdrawing water from beneath the Strub zone for use within the General District. In its final order, the trial court found the six issues appeared to be different formulations of the same question—whether the cap on the amount of water that the District is permitted to take from the Strub zone is a hard cap, as opposed to a cap that only applies to water used in certain portions of the District's service area. Nevertheless, the trial court separately addressed each of the issues and ultimately rejected the District's contentions. Briefly, the trial court specifically found the 1968 Amendment did not change that portion of the Judgment prohibiting the District from withdrawing more that 1,350 AFY from the Strub zone regardless of where the water was to be used.

Because the trial court addressed the merits of the District's argument, we also address the issue. While it is unclear whether the trial court considered the District's extrinsic evidence in reaching its conclusion, we must consider the proffered parol evidence when conducting our independent review into whether a latent ambiguity exists. (*Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 620.) We consider the District's evidence concerning the parties' intentions to determine whether the language of the 1968 Amendment is reasonably susceptible to the interpretation urged by the District. (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) After consideration of the

13

extrinsic evidence, we conclude the 1968 Amendment is not reasonably susceptible to the interpretation urged by the District.

To show a latent ambiguity, the District relies on the agreement between it and Palomar, the application Palomar filed with the court seeking the 1968 Amendment and its "course of conduct" after the 1968 Amendment (i.e., keeping Improvement District A separate from the General District). The Strub Plaintiffs, however, were not involved with the District's acquisition of Palomar, nor is there any indication the Strub Plaintiffs participated in the drafting of the application or the structure of the District's water delivery system after the acquisition. In any event, the application filed by Palomar seeking the 1968 Amendment contains language suggesting Palomar asked the court to dismiss it as a defendant in the Strub case and to substitute the District, but only to the extent it was acting on behalf of and for the benefit of Improvement District A. Additionally, the application prayed for an order "dismissing [the Strub] action as to [Palomar] and substituting [Improvement District] 'A' of [the District] in place and instead of [Palomar] and requiring [the District], for [Improvement District] 'A', to comply with and conform to all provisions of [the Judgment] as it may be modified." While the prayer for relief suggests Palomar sought to have Improvement District A (not the District in general) substituted as a defendant in the action, the language of the 1968 Amendment is not reasonably susceptible to this interpretation.

Moreover, from a common sense standpoint, we are puzzled by the District's proposed interpretation that the Strub Plaintiffs agreed in the Judgment that Palomar was bound to a hard cap of 1,350 AFY, to then, in effect, eliminate the hard cap in the 1968

14

Amendment by agreeing the hard cap applied only to the land known as Improvement District A when the District substituted into the action. Under this interpretation, the District could remove any amount of water it desired from the Strub zone as long as it used the water on its General District lands and not on Improvement District A. The District's interpretation makes no sense as it renders the 1,350 AFY limit in the Judgment illusory. We reject the District's assertion that the 1968 Amendment is latently ambiguous and decline to adopt the interpretation offered by the District.

B. Jurisdiction

The District contends the trial court exceeded its jurisdiction and the scope of the Judgment by purporting to bind the General District to the terms of the Judgment. This argument is contingent on us concluding that in the 1968 Amendment, the parties and the trial court intended to bind only Improvement District A to the terms of the Judgment and not the entire District, which includes the General District. Because we concluded that the 1968 Amendment bound the entire District, including the General District, the District's jurisdictional argument fails. (*Ante*, part III.A.)

C. Easement

As a fallback position, should we reject its primary argument that the 1968 Amendment bound only Improvement District A to the Judgment, the District contends the trial court's order must be reversed because the Judgment effectively created an easement that benefited and burdened the land described in the Judgment, i.e., the former Rincon Ranch/Improvement District A, and that the easement created by the Judgment does not exist as to the General District. Because the easement is appurtenant to

15

Improvement District A and tied to that land, nothing that occurred in 1968 could have bound the General District to the conditions of that easement.

Rancho Pauma asserts the question whether the Judgment created an easement or whether the parties intended such a result is a highly factual determination that the District forfeited by failing to raise it below. In its reply brief, the District states, "While [it] may not have explicitly argued for an 'easement' in the trial court, [its] counsel argued that the covenants made in [the Judgment] 'r[a]n with' and were 'appurtenant' to the *lands* described in the . . . Judgment (both those owned by the Strub [P]laintiffs and the Rincon Ranch itself)."

Our review of the District's opposition to Rancho Pauma's petition and the reporter's transcript of the hearing shows the District never argued that the Judgment created an easement appurtenant to Improvement District A. Nonetheless, we exercise our discretion to address this new issue as it involves interpreting the plain language of the Judgment which, as we will explain, is susceptible to only one interpretation.

The Judgment acknowledges the riparian and overlying water rights held by the Strub Plaintiffs and the water rights possessed by Palomar based on its agreement with the then-owners of the Rincon Ranch. The Judgment expressly states that Palomar's rights are "subject to the limitations imposed by law and by those hereinafter set forth which are imposed for the purpose of limiting defendants' use of said waters as against the Plaintiffs in this action, which limitations shall inure solely to the benefit of Plaintiffs and their respective heirs, successors and assigns." As relevant here, the Judgment stated, "Defendants . . . [were] forbidden to, and enjoined from, withdrawing more than" 1,350

16

AFY. The Judgment also "restrict[ed] and limit[ed]" use of this water to an area not exceeding 900 acres on the Rincon Ranch.

To "enjoin" means "[t]o legally prohibit or restrain by injunction" and "limit" means "[a] restriction or restraint." (Black's Law Dict. (9th ed. 2009), pp. 609, col. 2, 1012, col. 2 (Black's).) Use of this language suggests the parties intended the Judgment to act as an injunction, i.e., as an "order requiring a person to refrain from a particular act," which "may be granted by the court in which the action is brought, or by a judge thereof; and when granted by a judge, it may be enforced as an order of the court." (Code Civ. Proc., § 525.)

In contrast, an "easement appurtenant" is "[a]n easement created to benefit another tract of land, the use of easement being incident to the ownership of that other tract." (Black's, *supra*, at p. 586, col. 2.) There are various methods of creating an easement, including by express grant in a contract. (6 Miller & Starr, Cal. Real Estate (3d ed. 2011) Easements, §§ 15:13 at p. 15-61, 15:14 at p. 15-63.) The instrument creating the easement must identify the grantor and the grantee and adequately identify the servient tenement. (*Id.* at § 15:14 at p. 15-64.) Here, the Judgment does not refer to the parties as grantor or grantee, nor does it refer to the lands as the dominant or servient tenement. Accordingly, we conclude that Judgment did not create an easement appurtenant to the land known as Rincon Ranch or Improvement District A.

17

## DISPOSITION

The order is affirmed.  Respondent is entitled to its costs on appeal.

McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.