Filed 1/14/26  Rainey v. Nevada Irrigation District CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| MICHAEL RAINEY et al., | C102948 |
| Plaintiffs and Appellants, | (Super. Ct. No. CU19084309) |
| v. | |
| NEVADA IRRIGATION DISTRICT, | |
| Defendant and Respondent. | |

Michael Rainey and Emerson Pachaud (collectively plaintiffs) sued the Nevada Irrigation District (District) for inverse condemnation, private nuisance, and dangerous condition of public property, seeking damages for landslides allegedly resulting from water leaking and/or seeping from an irrigation ditch.  The trial court granted the District's motion for summary adjudication as to Rainey's nuisance and dangerous condition claims on statute of limitations grounds and bifurcated the trial into two phases: in the first phase, the trial court would conduct a bench trial addressing liability as to the

1

inverse condemnation claim; and, in the second phase, a jury would consider the question of inverse condemnation damages and Pachaud's remaining claims.

In the bench trial phase, the trial court found in favor of the District on inverse condemnation liability. The District then moved for judgment on the pleadings, arguing the trial court's finding that the District's irrigation ditch did not cause or contribute to the landslide damage on plaintiffs' properties was conclusive as to Pachaud's remaining claims. The trial court granted the motion and entered judgment in favor of the District.

On appeal, Pachaud[1] argues the trial court erred by granting the District's motion for judgment on the pleadings because the bifurcation order misleadingly or ambiguously stated that Pachaud's nuisance and dangerous condition claims would be decided by a jury and the bench trial ruling thus was not binding as to those claims. (Citing *Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399 (*Darbun*).) We disagree and affirm.

## BACKGROUND

Plaintiffs have neighboring properties located downhill from an irrigation ditch maintained, managed, operated, and owned by the District. Plaintiffs sued the District for inverse condemnation, private nuisance, and dangerous condition of public property, generally alleging: the District's irrigation ditch leaked water onto their properties; around the same time, subsurface water began seeping out of banks on their properties; the District attempted to fix the leak to no avail; water continues to leak/seep onto their properties; and the water has caused landslides on their land.

The District filed a motion for summary judgment or, in the alternative, summary adjudication, and a motion to bifurcate the trial. In December 2023, the trial court issued

---

[1] As explained *post*, we grant the District's motion to strike Rainey as a party to this appeal because he is not aggrieved by the trial court's ruling on the motion for judgment on the pleadings.

a memorandum decision and order denying the District's motion for summary judgment and granting and denying in part its motions for summary adjudication and bifurcation. As pertinent here, the trial court granted the motion for summary adjudication as to Rainey's nuisance and dangerous condition claims on statute of limitations grounds. The trial court further granted the motion to bifurcate the liability phase of the inverse condemnation claim from "the remaining claims and issues (inverse condemnation damages, nuisance and dangerous condition claims to be heard by the jury)." The trial court explained: "Resolution of the first liability claim in a bench trial will allow the Court to make a well-informed decision as to liability and will allow the Court and the parties to identify the scope of the issues that remain for potential jury resolution during the second phase in light of the Court's findings and conclusions. Moreover, resolution of the first claim will provide the parties with valuable information to inform their judgment as to whether they wish to resolve the matter or exercise their rights to a jury trial."

In August 2024, in the bench trial phase, the trial court issued a statement of decision in favor of the District on inverse condemnation liability. One basis for the trial court's no liability finding was that the plaintiffs had failed to establish by a preponderance of the evidence that the "leakage/seepage was a substantial cause of their landslide property damage." The trial court explained that it "carefully considered all direct and circumstantial evidence offered by the parties regarding alleged leakage/seepage/water escaping from the canal and causation of damages related thereto (including, but not limited to, all expert and lay testimony)" and "found that the evidence adduced by plaintiffs was unpersuasive and entitled to minimal, at best, weight."

The District then filed a motion for judgment on the pleadings, arguing the trial court's finding that plaintiffs had failed to establish causation as to the inverse condemnation claim was dispositive of Pachaud's remaining claims. The trial court granted the motion, explaining Pachaud could not state a cause of action for nuisance or

dangerous condition, both of which require a showing of causation, because the trial court's lack of causation finding in the equity phase was binding in any subsequent jury trial. (Citing *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1481, 1488; *McCorkle v. State Farm Ins. Co.* (1990) 221 Cal.App.3d 610, 616.) The trial court further found *Darbun*, *supra*, 239 Cal.App.4th 399 inapplicable because "the court made it clear in its decision granting bifurcation that it would decide the issue of liability in connection with the inverse condemnation claim, which expressly and necessarily included the issue of causation."

Plaintiffs filed a joint notice of appeal challenging the ruling on the motion for judgment on the pleadings.

DISCUSSION

I

*The Motion to Strike Is Granted*

The District filed an uncontested motion to strike Rainey as an appellant, asserting he lacks standing because he is not aggrieved by the motion for judgment on the pleadings ruling that is the subject of this appeal. The District explains: when the trial court issued the bifurcation ruling, it also granted summary adjudication against Rainey with respect to his nuisance and dangerous condition claims on statute of limitations grounds; the trial court thereafter held the bench trial and found in favor of the District on Rainey's inverse condemnation claim; and, accordingly, all three of Rainey's claims were fully adjudicated when the District filed the motion for judgment on the pleadings as to Pachaud's nuisance and dangerous condition claims.

We agree with the District and strike Rainey as a party to the appeal. (*Dow v. Lassen Irrigation Co.* (2022) 75 Cal.App.5th 482, 488 [only a party " 'whose rights or interests are injuriously affected' " by the order has standing to appeal it]; see *Santos v. El Guapo Tacos, LLC* (2021) 72 Cal.App.5th 363, 368 [plaintiff not aggrieved by the order on appeal lacked standing to prosecute the appeal].)

4

## II

### *The Judgment Is Affirmed*

A case generally may involve legal claims (e.g., claims relating to property rights, debts, and trespasses decided by a jury) and/or equitable claims (e.g., claims dealing with ethical matters decided by a judge). (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 155.) Complications arise when legal and equitable claims are asserted in a single lawsuit. "In most instances, separate equitable and legal [claims] are 'kept distinct and separate,' with legal issues triable by a jury and equitable issues triable by the court. [Citations.] [¶] The order of trial, in mixed actions with equitable and legal [claims], has great significance because the first fact finder may bind the second when determining factual issues common to the equitable and legal issues." (*Id.* at pp. 156-157.) Indeed, as pertinent here, "[i]t is well established that, in a case involving both legal and equitable issues, the trial court may proceed to try the equitable issues first, without a jury . . . , and that if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury." (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671.)

Pachaud acknowledges that the foregoing rule, known as the "equity first rule," would ordinarily apply here, but asserts the exception recognized in *Darbun* pertaining to a trial court's "misleading and inconsistent statements" regarding the nature of the bifurcated proceeding should preclude its application. (*Darbun*, *supra*, 239 Cal.App.4th at pp. 411-412.) We disagree and conclude *Darbun* is inapplicable.

In *Darbun*, the plaintiff sued the defendant for "breach of a lease agreement, seeking damages and specific performance." (*Darbun*, *supra*, 239 Cal.App.4th at pp. 401-402.) The trial court bifurcated the trial into two phases. The bench trial in the first phase was limited to the equitable issue of whether specific performance was an appropriate remedy. The court specifically reserved the breach and resulting contract damages issues for the second phase, to be tried by a jury. (*Id.* at p. 402.) The trial court

made clear that the first phase "was not being held to *adjudicate* the specific performance claim, which would require the court to make findings on the issue of breach . . . ." (*Id.* at p. 405.)

At the end of the equity phase, the trial court stated it needed to hear additional evidence at the jury trial to decide the specific performance issue. After the plaintiff presented its case to the jury, the defendant moved for nonsuit. The trial court granted that motion as to specific performance only, finding the lease could not be specifically performed and the plaintiff had failed to perform its obligations under the lease. The trial continued and the jury found in favor of the plaintiff and awarded damages. The defendant then filed a motion for judgment notwithstanding the verdict, which the trial court granted. "The court based its decision on findings it had made on the motion for nonsuit. The court reasoned that since it already had found the lease to be 'unenforceable' and [the plaintiff] had failed to perform its obligations, there was no substantial evidence to support the jury verdict in favor of [the plaintiff]." (*Darbun*, *supra*, 239 Cal.App.4th at p. 402.) The plaintiff appealed. (*Id.* at p. 408.)

The appellate court held that the trial court improperly granted the defendant's motion because "in cases involving mixed issues of equity and law, a trial court may not act as a fact finder on issues it specifically reserves for jury determination." (*Darbun*, *supra*, 239 Cal.App.4th at p. 402.) The court explained the trial court's "determination of the equitable issue was not dispositive of the legal issue of breach because the court, on its own, decided to limit the scope of the first phase to *exclude* that issue." (*Id.* at p. 411.) The court pointed to the "trial court's inconsistent and misleading statements" that "it did not want to hear evidence of breach during the first phase of trial" because "that issue was for the jury to decide," and noted the trial court "sustained objections against testimony that alluded to the issue of breach." (*Id.* at pp. 409, 411.) The appellate court further observed that "[i]t was not necessary for the court to make a finding on breach in order to decide the availability of specific performance." (*Id*. at p. 411.) In sum, because

6

the trial court was not acting as the proper fact finder on breach during the equity phase, its statements pertaining to breach did not foreclose jury determination on that issue, and the equity first rule did not apply. (*Id*. at pp. 411-412.)

We find no similarity between the facts in *Darbun* and this case. Here, the trial court's bifurcation order expressly stated that it would hold the bench trial on inverse condemnation liability. The issue of inverse condemnation liability necessarily included the issue of causation. (*City of Oroville v. Superior Court* (2019) 7 Cal.5th 1091, 1108 [inverse condemnation liability "depends on whether some element of physical, but-for causation is present to link the public improvement and the damage"].) The trial court was thus acting as the proper fact finder on the issue of causation during the equity phase.

The trial court further specified that resolution of the inverse condemnation liability issue would allow "the Court and the parties to identify the scope of the issues *that remain for potential jury resolution during the second phase in light of the Court's findings and conclusions*." (Italics added.) Pachaud ignores this sentence and focuses only on the sentences preceding and following that statement, which provide that the nuisance and dangerous condition claims would "be heard by the jury" and resolution of the inverse condemnation liability issue would "provide the parties with valuable information to inform their judgment as to whether they wish to resolve the matter or exercise their rights to a jury trial." But as Pachaud acknowledges, the meaning and effect of an order is "determined according to the rules governing the interpretation of writings generally." (*Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist.* (2015) 239 Cal.App.4th 109, 115.) And the meaning of a writing is derived from reading the document as a whole, with the individual provisions interpreted together to give effect to all. (See *Olson v. Doe* (2022) 12 Cal.5th 669, 680.) Reading the bifurcation order as a whole and giving effect to all provisions stated therein, the trial court ordered that Pachaud's nuisance and dangerous condition claims would be heard by a jury *if* those

7

claims remained for jury resolution in light of the trial court's findings and conclusions in the equity phase.

We find nothing misleading, inconsistent, or ambiguous in the trial court's order. The trial court did not, as in *Darbun*, make a finding on an issue that was excluded from the scope of the equity phase. Nor did the trial court make a finding unnecessary to deciding the inverse condemnation liability issue. (*Darbun*, *supra*, 239 Cal.App.4th at p. 411.) Because the trial court found as a matter of fact in the equity phase that the District's ditch did not cause or contribute to the landslide damage on Pachaud's property, the lack of causation finding was dispositive of Pachaud's remaining claims, leaving nothing to be tried by a jury. (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 185; see Gov. Code, § 835 [dangerous condition of public property requires showing of causation]; *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542 [nuisance requires showing of causation].) We accordingly affirm.

## DISPOSITION

The judgment is affirmed. The District shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)-(2).)

/s/
BOULWARE EURIE, J.

We concur:

/s/
HULL, Acting P. J.

/s/
KRAUSE, J.

8